**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RUDY WOODWARD, | ) |
| on behalf of plaintiff and a class, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MIRAMED REVENUE GROUP, LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1.      Plaintiff Rudy Woodward brings this action to secure redress from unlawful credit and collection practices engaged in by defendant Miramed Revenue Group, LLC.  Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

## VENUE AND JURISDICTION

3.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA) and 28  U.S.C. §§1331, 1337.

4.      Venue and personal jurisdiction in this District are proper because defendant's collection communications were received by plaintiff within this District.

## PARTIES

5.      Plaintiff Rudy Woodward is an individual who resides in the Northern District of Illinois.

6.      Defendant Miramed Revenue Group, LLC is a limited liability company chartered under Illinois law with offices at 991 Oak Creek Drive, Lombard, IL 60148, and 255 West Michigan

1

Avenue, Jackson, MI 49201. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

7.     Defendant Miramed Revenue Group, LLC regularly uses the mails and telephone to collect consumer debts originally owed to others, primarily medical debts.

8.     Miramed Revenue Group, LLC is a debt collector under the FDCPA.

9.     Miramed states on its Web site (http://www.miramedgs.com/about/profile):

MiraMed Global Services stands as the premier global provider of business process outsourcing solutions to healthcare organizations nationwide. MiraMed partners with hospitals, health networks, physician practices and related industry service organizations to provide a broad portfolio of customizable solutions, uncover and capitalize on hidden financial opportunities, improve productivity and ultimately increase profits.

The key to MiraMed's success is its unique business model that has evolved over the last twenty-five years. Under this model, MiraMed pairs healthcare industry experts with world-class processes, infrastructure and technology to deliver meaningful and measurable results. This proprietary model enables sustainable change by delivering a complete, customizable "end-to-end" solution devised to meet a client's own unique financial and organizational needs.

With operations across the globe, MiraMed's expertise stretches far and runs deep, providing healthcare organizations an unparalleled reservoir of industry knowledge, creative solutions and, most importantly, measurable results. Today, MiraMed is one of the largest healthcare BPOs in the United States, employing nearly 3,000 healthcare professionals worldwide, serving more than 700 hospitals and 8,000 providers while processing in excess of $1 billion in payments annually.

## FACTS

10.     Defendant Miramed Revenue Group, LLC has been attempting to collect from plaintiff Rudy Woodward two health care bills originated with Northwest Community Hospital, one in the amount of $705.98 and one in the amount of $467.82.

11.     The debts were incurred on May 13, 2006 and November 25-26, 2006, respectively.

12.     Northwest Community Hospital considered the bills to be in default no later than August 31, 2006 and March 3, 2007, respectively (Exhibits A-B). Northwest Community Hospital may have treated them as in default or delinquent at an earlier date.

13.     It is the policy and practice of Northwest Community Hospital to consider medical bills to be in default if they are unpaid not more than 90 days after the end of the month in which

they were incurred, and possibly sooner.

14.     All health care bills incurred by an individual are for personal, family or household purposes and not for business purposes.

15.     On or about May 29, 2007, the larger bill was placed with Miramed for collection. This was about 9 months after Northwest Community Hospital treated it as being in default.

16.     On or about July 2, 2008, the smaller bill was placed with Miramed for collection. This was about 16 months after Northwest Community Hospital treated it as being in default.

17.     Miramed has reported the debts to Trans Union and, on information and belief, other credit bureaus (consumer reporting agencies).

18.     Miramed reports debts to credit bureaus for the purpose of coercing payment. Reporting a debt to a credit bureau is "a powerful tool designed, in part, to wrench compliance with payment terms. . . ." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

19.     Miramed is required by the credit bureaus to report a date of first delinquency to the credit bureaus.

20.     The reason for this is that under federal law, a delinquent debt cannot appear on a person's credit report more than 7 years and 180 days after the beginning of the delinquency.   The Fair Credit Reporting Act, 15 U.S.C. §1681c ("FCRA"), provides:

> **§ 1681c.  Requirements relating to information contained in consumer reports**
>
> **(a) Information excluded from consumer reports.  Except as authorized under subsection (b), no consumer reporting agency may make any consumer report containing any of the following items of information:**
>
> **(1) Cases under title 11 of the United States Code or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years.**
>
> **(2) Civil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.**
>
> **(3) Paid tax liens which, from date of payment, antedate the report by more than seven years.**

**(4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.**

**(5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years. . . .**

**(c) Running of reporting period.**

**(1) In general. The 7-year period referred to in paragraphs (4) and (6) of subsection (a) shall begin, with respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action. . . .**

There is an exception for special reports prepared in connection with credit and life insurance transactions involving more than $150,000 and employment at more than $75,000.

21.     The 7 year period therefore began no later than March 1, 2007 for the larger bill (August 31, 2006 plus 180 days) and September 1, 2007 for the smaller bill (March 3, 2007 plus 180 days).

22.     Accordingly, the larger bill could lawfully remain on plaintiff's credit report until March 1, 2014 and the smaller bill could lawfully remain on plaintiff's credit report until September 1, 2014.

23.     The "date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action" is referred to in the credit and collections industry as the "date of first delinquency."

24.     Miramed altered or misreported the "date of first delinquency" of the two accounts so that the "date of first delinquency" was equal to the date when Miramed first became involved with the accounts, minus 60 days.

25.     Miramed reported the larger debt so that it would remain on plaintiff's credit report until November 2014 and the smaller debt so that it would remain on plaintiff's credit report until April 2015, which in each case was seven months longer than permitted by law.

26.     Miramed has standard policies and practices with respect to the reporting of debts

4

to

credit bureaus.

27.     Miramed followed its standard policies and practices with respect to the reporting of debts to credit bureaus when it reported plaintiff's debts.

28.     Plaintiff obtained a copy of his credit report with Trans Union on or about January 1, 2013 and learned of the misreporting of the two accounts at that time.

29.     A copy of Miramed's two "tradelines" on plaintiff's Trans Union credit report of January 1, 2013 is attached as Exhibit C.

30.     Miramed thereby misrepresented the length of time which its "tradeline" could appear on plaintiff's credit report, for the purpose of forcing plaintiff to pay.

31.     Miramed knew that this misrepresentation would be communicated by Trans Union to plaintiff.

## COUNT I – FDCPA

32.     Plaintiff incorporates paragraphs 1-31.

33.     Miramed engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C.

§§1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), and 1692f, by making false representations to Trans Union, and on information and belief other credit bureaus, and indirectly to plaintiff, concerning the length of time which its "tradeline" could remain on plaintiff's credit report.

34.     Section 1692e provides:

**§ 1692e.      False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)     The false representation of–**

**(A)     the character, amount, or legal status of any debt; . . .**

**(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

5

**(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

35.    Section 1692f provides:

**§ 1692f.    Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

## CLASS ALLEGATIONS

36.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

37.    The class consists of (a) all individuals (b) with respect to whom defendant reported a debt to a credit bureau (c) using as the "date of first delinquency" a date other than "the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action" (d) where the debt was on the individual's credit report any time during a period beginning one year prior to the filing of this action and ending 20 days after the filing of this action.

38.    On information and belief, the class is so numerous that joinder of all members is not practicable.

39.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

      a.    Whether defendant has a standard practice for reporting debts to credit bureaus;

      b.    Whether that standard practice involves misrepresentation of the date of first delinquency;

      c.    Whether such misrepresentation violates the FDCPA.

6

40.     Plaintiff's claim is typical of the claims of the class members.  All  are based on the same factual and legal theories.

41.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

42.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.      Individual actions are not economically feasible.

        b.      Members of the class are likely to be unaware of their rights;

        c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

        WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

        i.      Statutory damages;

        ii.      Attorney's fees, litigation expenses and costs of suit;

        iii.      Such other and further relief as the Court deems proper.


                s/Daniel A. Edelman
                Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)



Mario Kris Kasalo
THE LAW OFFICE OF M. KRIS KASALO, LTD.
"A Consumer Protection Law Firm"
20 North Clark Street, Suite 3100
Chicago, IL 60602

(312) 726-6160
(312) 698-5054 (FAX)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

**EXHIBIT A**

AETNA POS                               WOODWARD ,RUDY        FINAL NOTICE

                                                              05/13/06              08/31/06

                                                                                8:30 AM — 4:00 PM

Thank you for choosing Northwest Community Hospital for your healthcare needs. The items listed
below are for **Emergency Services** performed at **Northwest Community Hospital.**


                         PREVIOUS BALANCE                                          705.98




                                                                                   705.98
    FINAL NOTICE. ONLY PAYMENT IN FULL OR AN APPROVED PAYMENT
    PLAN WILL PREVENT FURTHER COLLECTION ACTIVITY.


                                      **Pay This Amount**                           705.98



        **Northwest Community Hospital**
        800 West Central Road
        Arlington Heights, IL 60005                      FINAL NOTICE    705.98



      RUDY WOODWARD                              NORTHWEST COMMUNITY HOSPITAL
                                                 PO BOX 95698
                                                 CHICAGO IL 60694-5698

**EXHIBIT B**

AETNA POS ██████████ WOODWARD ,RUDY    FINAL NOTICE

11/25/06 to 11/26/06    03/03/07

██████████    8:30 AM - 4:00 PM

Thank you for choosing Northwest Community Hospital for your healthcare needs. The items listed below are for **Inpatient Services** performed at **Northwest Community Hospital**.

PREVIOUS BALANCE    467.82

o.                    ██████████    467.82
FINAL NOTICE. ONLY PAYMENT IN FULL OR AN APPROVED PAYMENT
PLAN WILL PREVENT FURTHER COLLECTION ACTIVITY.
o.

**Pay This Amount**    467.82

**Northwest Community Hospital**
800 West Central Road
Arlington Heights, IL 60005

██████   FINAL NOTICE  467.82

██  RUDY WOODWARD
████████████████

llllllllllllllllllllllllllllll

NORTHWEST COMMUNITY HOSPITAL
PO BOX 95698
CHICAGO IL 60694-5698
llllllllllllllllllllllllllllll



**<u>EXHIBIT C</u>**

 Trans**Union.**   Online Dispute Service

## Updated Credit File

---

**Credit File Details**

| CURRENT FILE | FILE NUMBER | ⬛⬛⬛⬛ | NAME | RUDY R. WOODWARD |
|---|---|---|---|---|
| | REPORT DATE | 12/18/2012 | ADDRESS | ⬛⬛⬛⬛ |

You may see that TransUnion has enriched your credit report with additional personal and financial information not previously retained in our production database. This data can enable you and your creditors to see a more complete picture of how you have managed your credit over time.

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

**MIRAMED REVENUE GROUP  #**

991 OAK CREEK DR
LOMBARD, IL 60148
(630) 424-4000

| **Placed for Collection:** | 05/29/2007 | **Balance:** | $706 | **Pay Status:** | >In Collection< |
| **Responsibility:** | Individual Account | **Date Updated:** | 10/03/2008 | | |
| **Account Type:** | Open Account | **Original Amount:** | $706 | | |
| **Loan Type:** | COLLECTION AGENCY/ATTORNEY | **Original Creditor:** | MEDICAL-NORTHWEST COMMUNITY | | |

HOSPITAL
(Medical/Health
Care)

Past Due: >$706<

**Remarks:** >PLACED FOR COLLECTION<
**Estimated month and year that this item will be removed:** 03/2014

## MIRAMED REVENUE GROUP #████████

991 OAK CREEK DR
LOMBARD, IL 60148
(630) 424-4000

| | | | | | |
|---|---|---|---|---|---|
| **Placed for Collection:** | 07/02/2008 | **Balance:** | $468 | **Pay Status:** | >In Collection< |
| **Responsibility:** | Individual Account | **Date Updated:** | 10/03/2008 | | |
| **Account Type:** | Open Account | **Original Amount:** | $468 | | |
| **Loan Type:** | COLLECTION AGENCY/ATTORNEY | **Original Creditor:** | MEDICAL-NORTHWEST COMMUNITY HOSPITAL (Medical/Health Care) | | |
| | | **Past Due:** | >$468< | | |

**Remarks:** >PLACED FOR COLLECTION<
**Estimated month and year that this item will be removed:** 04/2015

REDACTED

REDACTED